UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
____ DIVISION

|  |  |
|---|---|
| Benjamin Hankinson, James Guerra, Ed Paulus, and Jeanette Gandolfo, individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>R.T.G. Furniture Corp., d/b/a Rooms to Go,<br><br>Defendant. | CASE NO: ___<br><br>**CLASS ACTION** |

**CLASS ACTION COMPLAINT**
**AND DEMAND FOR JURY TRIAL**

Plaintiffs Benjamin Hankinson, James Guerra, Edward Paulus, and Jeanette Gandolfo, individually, and on behalf of all others similarly situated, hereby file suit against Defendant, RTG Furniture Corp. d/b/a Rooms to Go, and allege the following:

**INTRODUCTION**

1.      Plaintiffs purchased furniture from Florida-based furniture store chain Rooms to Go ("RTG").  RTG has over a hundred stores in the United States. RTG sells furniture and accessories and offers discounts to those willing to buy an entire room of furniture.

2.      RTG sells with its furniture an optional add-on purchase called "ForceField Exclusive Fabric Protection Plan."  Under the plan, RTG promises that, "Your furniture will be professionally treated before delivery to resist food and beverage spills that occur in most households."[1] RTG prices the ForceField treatments at approximately 10% of the furniture's purchase price.

---

[1]  *See, e.g.,* http://www.roomstogo.com/content/Customer-Service/Warranty-Info/Fabric-Protection-Warranty, as accessed May 21, 2015.

*Cohen Milstein Sellers & Toll, PLLC*
*2925 PGA Boulevard, Suite 200, Palm Beach Gardens, FL 33410*
*Telephone: (561) 515-1400   Facsimile (561) 515-1401*

3.      Upon information and belief, RTG does not professionally treat its furniture with any additional fabric treatment for customers who purchase the ForceField plans.  In fact, testing conducted by Plaintiffs shows no presence of any fabric protectant on the furniture at all.  This is consistent with the admissions of former RTG employees.

4.      In addition, the same ForceField products that RTG mentions in its fabric protection plans may be purchased directly from the seller, Shield Industries, or at other retail stores for a fraction of what RTG sells for a single application - about$12.95 to $14.95 for a 22 ounce bottle.  Thus, even if RTG applied the ForceField product as promised, RTG deceives customers by not disclosing at the point of sale that they could purchase the fabric treatment for a far less price elsewhere.

5.      Upon information and belief, RTG pressures its sales staff to sell the ForceField plans to customers to increase sales revenue.  This high-pressure sales practice is known to and directed by top management located at RTG's headquarters in Florida.

6.      Plaintiffs seek a national class under Florida law on behalf of all purchasers of RTG's ForceField plans. In the alternative, Plaintiffs seek state-wide class actions under the home state law of each purchaser.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction for this case pursuant to 28 U.S.C. § 1332(d), as it is a class action for damages that exceed $5,000,000, exclusive of interest and costs.

8.      Plaintiff Benjamin Hankinson is a citizen and resident of Florida, over the age of eighteen years.  Plaintiff purchased furniture and a ForceField Fabric Protection Plan at a RTG store in West Palm Beach, Florida.

9.      Plaintiff James Guerra is a citizen and resident of Florida, over the age of eighteen years. Plaintiff purchased furniture along with a ForceField Fabric Protection Plan at an RTG store in West Palm Beach, Florida.

10.     Plaintiff Edward Paulus is a citizen and resident of North Carolina, over the age of eighteen years. Plaintiff purchased furniture along with a ForceField Fabric Protection Plan from an RTG store in Pompano Beach, Florida, for use in his North Carolina home.

11.     Plaintiff Jeanette Gandolfo is a citizen and resident of Florida, over the age of eighteen years. Plaintiff purchased furniture and a ForceField Fabric Protection Plan from an RTG store in Wellington, Florida.

12.     Defendant RTG Furniture Corp. is a privately held corporation headquartered at 11540 Highway 92 East, Seffner, Florida.

13.     This Court has personal jurisdiction over RTG because RTG maintains its principal place of business in Florida, regularly conducts business in Florida, and has sufficient minimum contacts in Florida.

14.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because RTG regularly transacts business in this district, some of the named plaintiffs and class members reside in this district, and events giving rise to these claims occurred in this district.

## FACTUAL ALLEGATIONS

**A**.     **Rooms To Go's ForceField Plans**

15.     RTG has approximately 160 stores in the United States, and also sells furniture online at its website. At each of its stores and on its website, RTG sells ForceField Fabric Protection Plans," or ForceField Leather Protection Plans."

16.     RTG includes a "Terms and Conditions of Sale" on the back of each in-store invoice and on a link on its website.  These terms provide warranty information and also state, "Except to the extent expressly prohibited by Florida law, we are not liable to you for any consequential or incidental damage for breach of this or any other warranty."[2]

17.     RTG sells leather and fabric protection plans that claim the furniture will be treated with stain-resistant materials before shipped to the customer. For instance, the RTG website states:

> Fabric & Leather Protection
>
> We want you to be happy and satisfied with your Rooms To Go products. To this end, we provide a ForceField™ Exclusive Fabric Protection 3-Year Limited Warranty and a ForceField™ Exclusive Leather Protection 3-Year Limited Warranty. **ForceField™ is a revolutionary treatment for fabric and leather that helps to prevent staining. It is applied in our Distribution Center just prior to your delivery and actually bonds itself to the fabric or leather, forming a barrier that resists stains.** ForceField protection availability is determined by your product choice and delivery location. If your purchase qualifies, the option to add this protection will be offered to you on the product page.[3]
> (emphasis added)

18.     Purchases made online allow customers to check a box to "Protect Your purchase" in for the purported application of the ForceField protection.

19.     Clicking on the hyperlink for the leather protection plan, the customer will see the following about RTG's "ForceField Plans":

> Protect   your   leather   furniture   investment   with   the FORCEFIELD™   LEATHER   PROTECTION   PLAN   from ROOMS TO GO. Your leather furniture will be professionally

[2] See, e.g., http://www.roomstogo.com/content/Customer-Service/Terms, last accessed on May 26, 2015.
[3] See, e.g., http://www.roomstogo.com/content/Customer-Service/Warranty-Info, last accessed May 21, 2015.

treated before delivery to resist food and beverage spills that occur in most households.

The FORCEFIELD™ policy is valid for three years from date of delivery to original owner of the leather furniture. In the event of stains caused by food and beverage spills, the stained area must be cleaned as soon as possible with FORCEFIELD™ conditioner. For online purchases only, the conditioner will be sent to you separately via UPS. Replacement bottles may be obtained by visiting any showroom.

If the stain remains, ROOMS TO GO will send a representative to your home to clean the stained area to the FULLEST POSSIBLE DEGREE and re-apply FORCEFIELD™ to the cleaned area at NO CHARGE.

LIMITED WARRANTY DOES NOT APPLY TO:

- Stains caused by human/animal body fluid, acid, dye, bleach or other corrosive.
- Leather which has been mishandled or abused.
- Leather cleaned with other cleaners other than FORCEFIELD™ clean.

20.    RTG brick-and-mortar stores sell the same ForceField plans.  For instance, the certificate attached to an invoice from a 2014 purchase in West Palm Beach states the following:

Congratulations on your confidence in the ForceField® Fabric Protection Plan you have just purchased from ROOMS TO GO. Your furniture will be professionally treated before delivery to resist all food and beverage spills that occur in most households. Stains caused by food and beverage spills, must be cleaned as soon as possible with ForceField® cleaner.

The limited warranty contained on the certificate also makes repeated references to "the treated fabric."

21.    Upon information and belief, the ForceField plans have been strongly pushed at

Hankinson, et al v. RTG Furniture, Corp.
Complaint
Page 6

sales meetings. Internal reports, called Bond or ForceField Reports, track a salesperson's ForceField sales. Management considers it unacceptable for a salesperson to allow fabric protection sales to drop below 90% of his or her furniture sales. If this occurs, the salesperson is sent to additional training on how to persuade customers to buy the ForceField plans. Where the salesperson cannot close a ForceField sale, members of Rooms To Go management often make the sales pitches themselves.

22. FORCEFIELD[TM] products are a propriety line of stain-resistant fabric protectors sold by Georgia-based Shield Industries, Inc. ("Shield"). Shield sells its 22-ounce bottle of Shield's fabric protector for $14.95.[4] Shield advertises its Fabric Protector as "Upholstery, Rug, and Fabric Protector Great for home, office, auto, boat and campers. Use to protect valuable furnishings against spills and stains. Unparalleled in performance. Keeps fabric and furnishings looking newer longer. …fabrics treated with ForceField® Upholstery and Fabric Protector are not only water repellent, but will repel virtually all liquid stains (even oil based stains)."

23. Shield also sells a ForceField leather cleaner and conditioner product for $12.95 a bottle.[5] Shield does not advertise the Leather Cleaner as a stain resistant product, but one that would "provide leather accessories, auto leather and interior leather furnishings the highest quality leather care available. Cleans and conditions finished leather goods, extending the life and beauty of the leather."

---

[4] See, e.g., https://secure.shieldindustries.com/store/index.php?route=product/product&path=20&product_id=55, as accessed on May 26, 2015.
[5] See, e.g., at https://secure.shieldindustries.com/store/index.php?route=product/product&path=20&product_id=52, last accessed on May 26, 2015.

24.     Finally, Shield sells a spot fabric cleaner for only $7.95 per bottle.[6]

25.     Upon information and belief, RTG sells ForceField products, and the fabric protectants RTG represents as included in its ForceField Fabric Protection Plans, are Shield's trademarked ForceField products.

**B.     Complaints**

26.     A former RTG employee wrote about the fabric protection plan back in 2006:

Fabric Protection Ripoff

By the mighty pen - 10/07/2006

Having worked for ROOMS TO GO for 7 years, I want to make people aware of just one of the many back-handed things this company does. Their salespeople are basically forced into saying almost anything to persuade the customer into paying for fabric/leather protection. They expect almost a 90% penetration of this. I can personally say, anything less is cause for being written up and being threatened with dismissal. I began in early 2000. We had a black vinyl set on the floor which was untreatable.

However, because of the sales contest going on, we were told by management to sell the "bond" on this in order to "spike" the Numbers, in which everyone did. 59.99 for a sofa, 49.99 for the loveseat I think 39.99 for the matching chaise. We sold a ton of these. That's just 1 store. Of course, from these type of practices, they went on to win the "presidents cup" and pocket $1400 per salesperson. …

Here, the manager ** told customer after customer that the leather protection offers a replacement warranty if it stains. That's as far from true as you can get. All it offers at those prices is a " lifetime" supply of cleaner and if soiled within 3 years, RTG, at THEIR DISCRETION, will come clean it. She also told customers that it extended the actual warranty on the furniture for 3 years. Another lie. The fabric is also at THEIR DISCRETION. Rooms To Go has probably made enough money on all their lies just on the

---

[6] See, e.g., at https://secure.shieldindustries.com/store/index.php?route=product/product&path=20&product_id=57, last accessed on May 26, 2015.

> protection itself, to finance the war in Iraq! I'm ashamed that I was
> a part of this. This is how I was trained, and what was expected of
> me.
>
> . . . I believe their practices could be illegal and they should have
> to pay back every dime taken from good hard working people,
> because of their misrepresentation. Spread the word.[7]

27.     However, the "word" about the misleading sales practices did not adequately

spread.  In 2009, another RTG salesperson posted three years later also noted that the "bond" or

fabric protection is either not applied or inadequately applied to actually work:

> Don't Buy the Bond (Fabric/Leather Protection)
>
> This is probably the most important thing that Rooms To Go sells
> from a management perspective. Salespeople have to sell it on
> roughly 95% of every piece of fabric or leather they sell or they get
> fired. Management won't admit to this but they literally won't sell
> you the furniture if you don't buy the "bond" as they call it. Their
> yearly bonuses depend largely on this one thing. …
>
> *        *        *
>
> "Bond" is a very strong word for what they do. An employee uses
> a wand to lightly mist the furniture, most of it probably evaporates
> before ever touching a sofa. Yet I have heard salespeople say that
> this is like having a Teflon coating on your furniture against stains.
> If you are wanting this to protect against stains it's worthless in my
> opinion.
> *        *        *
> As for the leather protection, everything applies except they do
> nothing to "bond" the leather, all you are buying is a lifetime
> supply of leather conditioner. Which I can almost guarantee unless
> you condition your sofa set every day you will not spend $200 on
> leather conditioner in your lifetime.[8]

28.     Customers have also complained that they saw no evidence of any treatment to

---

[7] http://mythreecents.com/reviews/rooms-to-go, as accessed May 21, 2015.
[8] See, e.g., http://roomstogo-complaints.blogspot.com/2009/01/dont-buy-bond-fabricleather-protection.html, as
accessed on May 21, 2015.

suggest stain resistance:

> The quality of RTG furniture sucks And their so-called "Force Field" treatment is a total scam!!!! Purchased one Cindy Crawford Sidney Road sofa, one loveseat and one ottoman from RTG's supercenter in Katy. The sales person persuaded me into buying their so-called "Force Field" protection plan and I ended up paying about USD200 for the plan. She even gave me two tiny bottles of "Force Field" branded cleaning solutions, suggested me that I can use them to clean the sofa if it is stained, making me believe that the sofa will be carefully treated. When I asked how the "Force Field" works, she explained that's something like "scotchgard."

> The sofa set arrived a week later, the delivery guys moved all pieces in and left within less than five minutes. All the three pieces were covered by thinnest plastic wrap and they removed the plastic and took it away. Again, all was done within 5 minutes before I can realize anything. And I haven't found any trace on the sofa, the love seat or the ottoman, indicating that they had been treated to resist liquid or soil. Not even a tiny tag says they were "Force Field" treated. Then I drop a tiny amount of water, as I will usually do to test the scotchgarded furnitures, the water didn't bead up at all and the water just darken the fabric, as you can see in one of the photos I uploaded. So that's what you called "Force Field" treated? the $6 scotchgard works better than the expensive $200 "Force Field" treatment, if there is really such treatment.[9]

> \*       \*       \*

> I too purchased the "BOND" when I purchased my 3 piece living room set. Upon delivery I asked the delivery folks if the bond had been applied because I noticed the factory plastic was still on the furniture as well as the moving blankets and shrink wrap. They said if its on the ticket then it should have been applied. After about 8 months the first accidental spill finally happened. Guess what it soaked right through, no beading as it should have done if applied correctly. I contacted customer service "WHAT A JOKE" It should be 1-800 we are not going to help you or stand behind our product or services. After speaking with them twice they sent a

---

[9] See, e.g., review #478180from Mar. 5, 2014, Katy, Texas. Last accessed at http://rooms-to-go.pissedconsumer.com/rooms-to-go-is-a-total-scam-especially-for-its-force-field-project-20140305478180.html, on May 21, 2015.

tech out to verify if the "bond" had been applied or not. The tech could not find a "sticker" on any of the three pieces and he said it should be a sticker applied once the furniture is treated. After that they wanted to come and apply the bond to the furniture. I told them I wanted new furniture with the bond applied prior to delivery like I had paid for to begin with. They flat out refused. The customer service manager as she claimed to be even told me that the spills on my sofa were between me and my sofa and I should not spill things on it. After arguing with them several times I finally filed a claim with the BBB. RTG finally agreed to replace the furniture but refused to apply the bond and issued a full refund for the price I had paid for the bond to begin with. Of course that was after several messages through the BBB.

I also contacted the CEO of Forcefield protectant and he is very nice and actually responds personally to emails and phone calls. RTG is mis representing this bond quite a bit. You are better off to buy the furniture then buy the Forcefield protectant and cleaner directly from Forcefield. Its just $15 per spray bottle from them and the cleaner is $20 if I remember correctly. Even if it takes 1 bottle per piece that is only $45 to protect all three pieces vs $180 that RTG charges and never even applies it as they should.

I am not sure I will ever shop with RTG again after the experience that i have had. RTG is the issue with the Bond not the Forcefield product. If they applied it as they should it would work wonderfully.[10]

### C.   Plaintiffs' Testing

29.   In 2015, Plaintiffs, through counsel, had their purchases from RTG tested for the presence of stain-resistant chemicals. The purchases aged between three years and six months from date of delivery.  All of the furniture had been sold as protected by the ForceField Plans and each customer purchased the fabric protection plans.  The testing showed no evidence that either the ForceField product, or any other stain-resistant treatment, had been applied to the

---

[10]   August 1, 2015 entry for "Jacob" at http://roomstogo-complaints.blogspot.com/2009/01/dont-buy-bond-fabricleather-protection.html

furniture.

### D.    Plaintiffs' Experiences

*a.    Benjamin Hankinson*

30.    On September 15, 2012, Plaintiff Benjamin Hankinson and his wife purchased a sofa, a chaise, and an armless two-seater at a West Palm Beach RTG store.  Before finalizing his purchase, an RTG sales representative suggested that the Hankinsons buy the ForceField Protection Plan, and that RTG would professionally treat the furniture to protect against stains. Based upon these representations, Mr. Hankinson purchased the Force Field Protection Plan, paying $59.99 to treat his sofa, $44.99 to treat his chaise, and $39.99 to treat his two-seater.

31.    Based upon RTG's representations, Mr. Hankinson expected RTG would professionally apply the ForceField protectant to his furniture prior to delivering the furniture to his home.

32.    Subsequent to his RTG purchase, Mr. Hankinson learned that RTG does not professionally treat its furniture with the ForceField product as promised.  Testing done on his furniture showed no evidence of the ForceField product, or any other fabric protectant. Had Mr. Hankinson known that RTG was not applying to his furniture the fabric protectant it represented it would apply, he would not have purchased the ForceField Protection Plan.

33.    Subsequent to his purchase at RTG, Mr. Hankinson also learned that the ForceField product that RTG stated that it would apply to his furniture was available for around $15 in a spray bottle directly from Shield Industries. Had Mr. Hankinson known that information, he would not have paid approximately $145.00 for a supposed one-time application of the ForceField product on his furniture.

34.     As a result of RTG's misrepresentations and omissions, Mr. Hankinson has suffered economic damages and an ascertainable loss.

        b.     *James Guerra*

35.     Plaintiff James Guerra purchased two accent chairs from a West Palm Beach RTG store on March 16, 2015.  As he went to pay for the chairs, he learned that the sales agent had added $99.98 for the ForceField Fabric protection plain. He asked about the plan, and was told that RTG would professionally treat the chairs with a chemical that would protect the furniture from fading and staining.  Upon these representations, Mr. Guerra agreed to buy the ForceField Plan.

36.     Based upon RTG's representations, Mr. Guerra expected that RTG would professionally apply the ForceField protectant to his chairs before delivering them to his home.

37.     Subsequent to his RTG purchase, Mr. Guerra learned that RTG does not professionally treat its furniture with the ForceField product as promised.   Testing on his furniture showed no evidence of the ForceField product, or any other fabric protectant.  Had Mr. Guerra known that RTG was not applying any fabric protectant to his furniture, he would not have purchased the ForceField Protection Plan.

38.     Subsequent to his purchase at RTG, Mr. Guerra also learned that the ForceField product that RTG stated it would apply to his furniture was available for around $15 in a spray bottle directly from Shield Industries.  Had Mr. Guerra known this information he would not have paid almost $100 for a supposed one-time application of the ForceField product to his furniture.

39.     As a result of RTG's misrepresentations and omissions, Mr. Guerra has suffered

economic damages and an ascertainable loss.

       *c.*    *Edward Paulus*

40.     On May 15, 2014, Edward Paulus purchased a sofa and a loveseat from a Pompano Beach RTG store.  The sales agent suggested to Mr. Paulus and his wife that they should purchase the ForceField Protection Plan, and that RTG would professionally treat the furniture with a chemical to protect against stains.  Based upon these representations, Mr. Paulus agreed to purchase the ForceField Protection Plan, and paid $69.99 to treat his sofa, and $59.99 to treat his loveseat.

41.     Based upon RTG's representations, Mr. Paulus expected RTG to professionally apply the protectant to his furniture before it was shipped to his home in North Carolina.

42.     Subsequent to his RTG purchase, Mr. Paulus learned that RTG does not actually apply the fabric protectant to its furniture as promised.  Testing done on his furniture showed no evidence of the ForceField product or any other fabric protectant.  Had Mr. Paulus known that RTG was not applying to his furniture the fabric protectant it represented it would apply, he would not have purchased the ForceField Protection Plan.

43.     Subsequent to his purchase at RTG, Mr. Paulus also learned that the ForceField product that RTG stated it would apply to his furniture was available for around $15 in a spray bottle directly from Shield Industries.  Had Mr. Paulus known that information, he would not have paid approximately $130.00 for a supposed one-time application of the ForceField product on his furniture.

44.     As a result of RTG's misrepresentations and omissions, Mr. Paulus has suffered economic damages and an ascertainable loss

.

### d.    Jeanette Gandolfo

45.    On March 18, 2015, Plaintiff Jeanette Gandolfo purchased a sofa and loveseat from RTG's Wellington store.  At the time of purchase, the RTG salesperson suggested she purchase the ForceField Protection Plan.  The salesperson represented that under the plan, RTG would professionally treat the furniture with a chemical to protect against stains and discoloration.  Based upon these representations, Ms. Gandolfo purchased the ForceField Protection Plans, and paid $69.99 to treat her sofa, and $59.99 to treat her loveseat.

46.    Based upon RTG's representations, Ms. Gandolfo expected RTG to professionally apply the ForceField protectant to her furniture before delivery to her home.

47.    Subsequent to her RTG purchase, Ms. Gandolfo learned that RTG does not actually apply the fabric protectant to its furniture as promised.  Testing done on her furniture showed no evidence of the ForceField product or any other fabric protectant.  Had Ms. Gandolfo known that RTG was not applying the ForceField product to her furniture as it represented it would, she would not have purchased the ForceField Protection Plan.

48.    Subsequent to her purchase at RTG, Ms. Gandolfo also learned that the ForceField product that RTG claimed it would apply to her furniture was available for around $15 in a spray bottle directly from Shield Industries.  Had Ms. Gandolfo known that information before her purchase, she would not have paid approximately $130.00 for a supposed one-time application of the ForceField product on her furniture.

49.    As a result of RTG's misrepresentations and omissions, Ms. Gandolfo has suffered economic damages and an ascertainable loss.

## CLASS ALLEGATIONS

50.     Plaintiffs re-allege and incorporate by reference herein all of the allegations contained in paragraphs 1 through 49.

51.     Pursuant to the Federal Rules of Civil Procedure, Plaintiffs bring this action on behalf of themselves and a nationwide class of all other persons similarly situated and defined as follows:

> All purchasers of RTG ForceField Fabric or Leather Protection Plans from RTG from 2011 to the present.

> Excluded from the Class are Defendants, any officers or directors thereof, together with the legal representatives, heirs, successors, or assigns of any Defendant, and any judicial officer assigned to this matter and his or her immediate family.

> Included within the Class is a statewide subclass of all persons who reside in Florida and North Carolina who purchased RTG ForceField Fabric or Leather Plans from RTG.

52.     This action has been brought and may properly be maintained as a class action as it satisfies the numerosity, commonality, typicality, adequacy, and superiority requirements. Plaintiffs seek to represent an ascertainable Class, as determining inclusion in the class can be done through the Defendant's own records, as the warranty certificates for the plans are numbered and tied to Sales Order numbers.

53.     Plaintiffs reserve the right to amend the Class definition if discovery and further investigation reveal that the Class should be expanded, divided into subclasses, or modified in any other way.

54.     Although the precise number of Class members is unknown and can only be

determined through appropriate discovery, Plaintiffs believe, and on that basis allege, that the proposed Class is so numerous that joinder of all members would be impracticable as RTG sells thousands of pieces in furniture yearly, and the ForceField protection is sold with a large portion of those sales.

55.    Questions of law and fact common to the Plaintiff Class exist that predominate over questions affecting only individual members, including *inter alia*:

a. Whether Defendant actually professionally applies the ForceField products to its furniture as represented;

b. Whether Defendant applies an adequate amount of the ForceField products to actually provide stain resistance;

c. Whether the Defendant applies any stain-resistant chemicals to its furniture when customers purchase the ForceField Plans;

d. Whether Defendants' statements about the additional application of a stain resistant product when purchasing ForceField are deceptive, unlawful or unfair;

e. Whether Defendant is charging its customers tremendous mark-ups for the same ForceField products that customers can readily obtain from other stores or directly from the manufacturer for approximately $14.95 for an entire bottle;

f. Whether Defendant's practices are deceptive, unlawful, or unfair in any respect thereby violating Florida's Deceptive and Unfair Trade Practices Act. (FDUPTA), Fla. Stat. § 501.201, *et seq.*;

g. Whether Defendant's conduct constitutes unjust enrichment; and

h. Whether Defendant's conduct injured the putative Class members and, if so, the

extent of the damages.

56.     Plaintiffs are members of the putative Class. The claims asserted by the Plaintiffs in this action are typical of the claims of the members of the putative Class, as the claims arise from the same course of conduct by the Defendant and the relief sought is common.

57.     Plaintiffs will fairly and adequately represent and protect the interests of the members of the putative Class, as their interests are coincident with, not antagonistic to, the other Class members. Plaintiffs have retained counsel competent and experienced in both consumer protection and class action litigation.

58.     Certification of the Class is appropriate pursuant to FRCP 23 because questions of law or fact common to the respective members of the Class predominate over questions of law or fact affecting only individual members.  This predominance makes class litigation superior to any other method available for the fair and efficient adjudication of these claims including consistency of adjudications.  Absent a class action it would be highly unlikely that the members of the Class would be able to protect their own interests because the cost of litigation through individual lawsuits might exceed the expected recovery.

59.     A class action is an appropriate method for the adjudication of the controversy in that it will permit a large number of claims to be resolved in a single forum simultaneously, efficiently, and without the unnecessary hardship that would result from the prosecution of numerous individual actions and the duplication of discovery, effort, expense, and the burden of the courts that individual actions would create.

60.     The benefits of proceeding as a class action, including providing a method for obtaining redress for claims that would not be practical to pursue individually, outweigh any

difficulties that might be argued with regard to the management of the class action.

## COUNT I – Violation of Florida's Deceptive and Unfair Trade Practices Act
### (National or, in the Alternative, State Wide Class)

61.     Plaintiffs re-allege and reaffirm herein all of the allegations contained in paragraphs 1 through 49.

62.     In Florida, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful.

63.     Plaintiffs, individually, and the members of the putative Class are "consumers" within the meaning of Florida Statute § 501.203.

64.     Defendant's practice of misrepresenting the qualities of its ForceField Protection Plans constitutes unfair, deceptive, or unconscionable trade practices in violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") as provided by §§ 501.201-.213, Florida Statutes.

65.     Defendant's practice of not disclosing to its customers at the point of sale the far lower cost of directly purchasing the fabric protection sprays from Shield Industries or other re-sellers also constitutes unfair, deceptive, or unconscionable trade practices in violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") as provided by §§ 501.201-.213, Florida Statutes.

66.     Defendant's practices are unconscionable and constitute unfair and deceptive methods of competition.

67.     Defendant's practices were directed out of RTG's corporate headquarters in Seffner, Florida.  Previous employees assert that it RTG management pressured and incentivized

the RTG salesforce to sell ForceField plans as much as possible, and RTG management knew what was (or was not) being applied to its furniture, the costs of the ForceField products, and how much of the fabric protector products were being used.  In addition, RTG's Terms and Conditions of Sale note that, "Except to the extent expressly prohibited by Florida law, we are not liable to you for any consequential or incidental damage for breach of this or any other warranty."[11]  As such, RTG intends Florida law to apply to its sales, and Florida law should apply to all purchases from RTG nationwide.

68.     If the Court finds that Florida law does not apply to all RTG sales, Plaintiffs allege a claim on behalf of Plaintiff Paulus under the North Carolina Gen. stat. §§75-1.1 through 75.35.

69.     As a result of these unfair and deceptive trade practices, Plaintiffs individually, and the members of the putative Class, have suffered actual damages in that they were promised professionally treated furniture that was to be stain-resistant and did not receive it.

70.     In addition, even if Defendant's actually applied the ForceField products as represented, Plaintiffs have suffered actual damages as they paid vastly more for fabric treatment than they would have paid had Defendant disclosed that the ForceField products were available to consumers at a far lower cost than what Defendant charged.

71.     Plaintiffs are entitled to recovery for their purchase of the ForceField Protection Plans, and to recover costs and reasonable attorneys' fees.

## COUNT II – UNJUST ENRICHMENT

72.     Plaintiffs re-allege and reaffirm herein all of the allegations contained in

---

[11] See, e.g., http://www.roomstogo.com/content/Customer-Service/Terms, last accessed on May 26, 2015.

*Cohen Milstein Sellers & Toll, PLLC*
*2925 PGA Boulevard, Suite 200, Palm Beach Gardens, FL 33410*
*Telephone: (561) 515-1400   Facsimile (561) 515-1401*

paragraphs 1 through 49

73.     Plaintiffs purchased Defendant's ForceField plans as a direct result of Defendant's misrepresentations and omissions, including whether the products were actually applied, and omitting that the products could be purchased directly from the seller of ForceField fabric protection products at a fraction of the cost.

74.     Defendant generated profits from its misconduct.

75.     Defendant has knowingly and unjustly enriched itself at the expense and to the determinant of the Plaintiffs and each member of the Class by collecting money to which it is not entitled.

76.     It would be morally wrong to permit the Defendant to enrich itself at the expense of the Plaintiffs and the Class.  Defendant should be required to disgorge this unjust enrichment.

77.     To the extent Florida law does not apply to the purchase of Edward Paulus, he asserts a claim for unjust enrichment under North Carolina law.

**WHEREFORE,** Plaintiffs request judgment against the Defendant for themselves and the members of the class as follows:

A.     Certification of the Class pursuant to FRCP 23;

B.     Restitution of all charges paid by Plaintiffs and the Class;

C.     Disgorgement to Plaintiffs and the Class of all monies wrongfully obtained and retained by Defendant;

D.     Compensatory and actual damages in an amount according to proof at trial;

E.     Statutory damages and penalties, as provided by law;

F.      Prejudgment interest commencing on the date of payment of the charges and continuing through the date of entry of judgment in this action;

G.      Costs and fees incurred in connection with this action, including attorney's fees, expert witness fees, and other cots as provided by law;

H.      Punitive damages; and

I.      Granting such other relief as the Court deems proper.

## **JURY TRIAL DEMAND**

Plaintiffs hereby request a jury trial for all issues so triable.

DATED this 12th day of August, 2015.

Respectfully submitted,

s/Theodore J. Leopold
Theodore J. Leopold (FL Bar No. 705608)
Leslie M. Kroeger (FL Bar No. 989762)
Diana L. Martin (FL Bar No. 624489)
**COHEN MILSTEIN SELLERS & TOLL PLLC**
2925 PGA Boulevard, Suite 200
Palm Beach Gardens, FL  33410
Telephone:  (561) 515-1400
Facsimile:   (561) 515-1401

Andrew N. Friedman
Douglas J. McNamara
**COHEN MILSTEIN SELLERS & TOLL PLLC**
1100 New York Ave. NW
East Tower, 5th Floor
Washington, DC  20005
Telephone:  (202) 408-4600
Facsimile:   (202) 408-4699

Hankinson, et al v. RTG Furniture, Corp.
Complaint
Page 22

Steven G. Calamusa (Fla Bar No. 992534)
**GORDON & DONER**
4114 Northlake Boulevard, Suite 200
Palm Beach Gardens, FL 33410
Telephone: (561) 799-5070
Facsmilie: (561) 799-4050

**Attorneys for Plaintiffs**

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)* NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.

## I. (a) PLAINTIFFS

## DEFENDANTS

**(b)** County of Residence of First Listed Plaintiff

*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant

*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Attorneys *(If Known)*

**(d)** Check County Where Action Arose:   ☐ MIAMI- DADE  ☐ MONROE  ☐ BROWARD  ☐ PALM BEACH  ☐ MARTIN  ☐ ST. LUCIE  ☐ INDIAN RIVER  ☐ OKEECHOBEE  ☐ HIGHLANDS

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government
     Plaintiff

☐ 3  Federal Question
     *(U.S. Government Not a Party)*

☐ 2  U.S. Government
     Defendant

☐ 4  Diversity
     *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff)*
*(For Diversity Cases Only)* and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers' Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury<br>☐ 362 Personal Injury - Med. Malpractice | **PERSONAL INJURY**<br>☐ 365 Personal Injury - Product Liability<br>☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability<br>☐ 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 690 Other | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br>**PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark<br>**SOCIAL SECURITY**<br>☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g)) | ☐ 375 False Claims Act<br>☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Sat TV<br>☐ 850 Securities/Commodities/ Exchange<br>☐ 890 Other Statutory Actions<br>☐ 891 Agricultural Acts<br>☐ 893 Environmental Matters<br>☐ 895 Freedom of Information Act<br>☐ 896 Arbitration<br>☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision<br>☐ 950 Constitutionality of State Statutes |
| **REAL PROPERTY**<br>☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | **CIVIL RIGHTS**<br>☐ 440 Other Civil Rights<br>☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/ Accommodations<br>☐ 445 Amer. w/Disabilities - Employment<br>☐ 446 Amer. w/Disabilities - Other<br>☐ 448 Education | **PRISONER PETITIONS**<br>**Habeas Corpus:**<br>☐ 463 Alien Detainee<br>☐ 510 Motions to Vacate Sentence<br>**Other:**<br>☐ 530 General<br>☐ 535 Death Penalty<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br>☐ 560 Civil Detainee – Conditions of Confinement | **IMMIGRATION**<br>☐ 462 Naturalization Application<br>☐ 465 Other Immigration Actions | **LABOR**<br>☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 740 Railway Labor Act<br>☐ 751 Family and Medical Leave Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act<br>**FEDERAL TAX SUITS**<br>☐ 870 Taxes (U.S. Plaintiff or Defendant)<br>☐ 871 IRS—Third Party 26 USC 7609 | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☐ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Re-filed (See VI below)  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district *(specify)*  ☐ 6 Multidistrict Litigation  ☐ 7 Appeal to District Judge from Magistrate Judgment  ☐ 8 Remanded from Appellate Court

## VI. RELATED/ RE-FILED CASE(S)

*(See instructions):*   a) Re-filed Case ☐YES ☐ NO   b) Related Cases ☐YES ☐ NO

JUDGE                                 DOCKET NUMBER

## VII. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause *(Do not cite jurisdictional statutes unless diversity)*:

LENGTH OF TRIAL via _____ days estimated (for both sides to try entire case)

## VIII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   DEMAND $ _____   CHECK YES only if demanded in complaint:

JURY DEMAND:   ☐ Yes  ☐ No

ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE

DATE                          SIGNATURE OF ATTORNEY OF RECORD

s/ Theodore J. Leopold

FOR OFFICE USE ONLY

RECEIPT #              AMOUNT              IFP              JUDGE              MAG JUDGE

JS 44 Reverse  (Rev. 12/12)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

## Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.  (a) Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) Attorneys. Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.  Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

**III.  Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.  Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.  Origin.** Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Refiled (3) Attach copy of Order for Dismissal of Previous case. Also complete VI.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

Remanded from Appellate Court. (8) Check this box if remanded from Appellate Court.

**VI.  Related/Refiled Cases.** This section of the JS 44 is used to reference related pending cases or re-filed cases. Insert the docket numbers and the corresponding judges name for such cases.

**VII.  Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553
Brief Description: Unauthorized reception of cable service

**VIII.  Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

_____ District of _____

|  |  |  |
|---|---|---|
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| *Plaintiff(s)* | ) | |
| v. | ) | Civil Action No. |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| *Defendant(s)* | ) | |

**SUMMONS IN A CIVIL ACTION**

To: *(Defendant's name and address)*

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____        _____

*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)*

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)*

_____ on *(date)* _____ ; or

❏ I returned the summons unexecuted because _____ ; or

❏ Other *(specify):*

_____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc: