# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. 9:15-CV-81139-COHN/SELTZER

BENJAMIN HANKINSON, JAMES
GUERRA, JEANETTE GANDOLFO, LISA
PALMER, DONALD ANDERSON, and LISA
PRIHODA, individually and on behalf of
others similarly situated,

    Plaintiffs,

vs.

R.T.G. FURNITURE CORP., d/b/a Rooms
To Go, RTG AMERICA, LLC, THE
JEFFREY SEAMAN 2009 ANNUITY
TRUST, RTG FURNITURE CORP. OF
GEORGIA, d/b/a Rooms To Go, ROOMS
TO GO NORTH CAROLINA CORP., d/b/a
Rooms To Go, RTG FURNITURE OF
TEXAS, L.P., d/b/a Rooms To Go, RTG
TEXAS HOLDINGS, INC., and R.T.G.
FURNITURE CORP. OF TEXAS,

    Defendants.

## DECLARATION OF DOUGLAS J. MCNAMARA IN SUPPORT OF UNOPPOSED MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND INCENTIVE AWARDS

I, Douglas J. McNamara, declare:

1.     I am admitted *pro hac vice* in the above captioned case. I have practiced law since 1995. I am Of Counsel at Cohen Milstein Sellers & Toll, PLLC. I make this declaration upon personal knowledge as the lead litigator for Lead Counsel in this action and in *Triplett v. Rooms To Go North Carolina Corp. d/b/a Rooms to Go, et. al.*, Case No. 5:16-cv-926 (E.D.N.C.)

2.     My firm acted as Lead Counsel in both the *Hankinson* and *Triplett* actions and worked in coordination with our co-counsel, Gordon & Doner PC. Throughout the litigation, we

1

ensured that the matter was staffed efficiently and took steps to avoid the duplication of efforts. This included dividing work among the firms, as well as individual attorneys at those firms, to minimize duplication, including assigning specific responsibility for particular tasks and/or subject areas.

3. My firm worked on virtually every aspect of this litigation. Among the tasks undertaken by my firm were: (1) Conducting a pre-filing investigation, and interviewing potential Plaintiffs; (2) Drafting four complaints (3 *Hankinson* complaints and 1 *Triplett* complaint); (3) Reviewing and analyzing thousands of documents; (4)Taking most of the fact depositions of RTG and Shield Industries employees; (5) Defending some of the Plaintiffs' depositions, and former RTG employee's deposition; (6) Interviewing and preparing Plaintiffs' six expert witnesses; (7) Defending depositions of five of the Plaintiffs' expert witnesses; (8) Deposing Defendants' expert witnesses; (9) Successfully opposing Defendants' four motions to dismiss; (10) Drafting three motions to compel, which yielded more discovery. ECF No. 45, 66, 88; (11) Successfully moving (unconsented) to modify the schedule twice. ECF No. 51, 108; (12) Drafting a motion and reply brief in favor of class certification. ECF No. 104, 174; (13) Drafting 6 briefs to oppose RTG's motions to exclude Plaintiffs' experts. ECF No. 157, 161, 163, 165, 172, 173; (14) Negotiating the settlement agreement with Defense Counsel; (15) Successfully moving for preliminary approval of the settlement and conditional certification; (16) Reviewing settlement materials, and assisting the claims administrator in responding to claimants.

4. Prior to filing, Cohen Milstein investigated Defendants' ("RTG") application of ForceField protectant by hiring an expert (Marco Kaltofen) to test the furniture of three named Plaintiffs for the presence of fluoropolymer substances.

5. On August 12, 2015, plaintiffs Benjamin Hankinson, James Guerra, and Jeanette Gandolfo initiated a putative nationwide class action against R.T.G. Furniture Corp. d/b/a Rooms To Go in the United States District Court, Southern District of Florida, captioned Hankinson, v. R.T.G. Furniture Corp., d/b/a Rooms to Go, Case No. 9:15-cv-81139, concerning RTG's ForceField fabric and leather protection plans.

6. On December 1, 2016, Cohen Milstein filed an action in North Carolina against RTG, asserting claims similar to the Second Amended Complaint in the Hankinson action. *See* Triplett v. Rooms To Go North Carolina Corp., et al., No. 516-cv-00926-FL (E.D.N.C.).

7. Between January 2016 and December 2016, the parties engaged in extensive discovery, completing full class, fact, and expert discovery. The parties exchanged written discovery, including multiple sets of interrogatories and requests for production. Cohen Milstein reviewed tens of thousands of documents from RTG, Shield Industries (who sells the ForceField product to RTG), and ICT, a manufacturer or the protectants that is sold as ForceField. Plaintiffs' Counsel conducted 16 fact depositions of RTG and Shield personnel, and defended six depositions of Plaintiffs and a family member (Cherish Hankinson), and a former employee of RTG at her deposition. Cohen Milstein took 14 of the fact depositions, and defended three of the named Plaintiffs, Cherish Hankinson, and the former RTG employee. Cohen Milstein also defended five of the Plaintiffs' six expert witnesses, and deposed RTG's two expert witnesses.

8. To support class certification, Plaintiffs assembled six experts in the case. These experts included:

3

- A scientist, Dr. Marco Kaltofen, who tested for fluoropolymers to determine if Plaintiffs' furniture had any evidence of ForceField protectant application;

- A scientist, Dr. Randy Meirowitz, a member of the American Association of Textile Chemists and Colorists, who tested the efficacy of ForcField, and opined on the adequacy of RTG's protocol in applying the protectant to different fabrics;

- A furniture expert, Leonard Backer, who conducted a site visit to RTG's Lakeland, Florida site to review the ForceField application process;

- An economist, Christopher Jackman, to examine RTG's records of purchases of ForceField products, and the sales of ForceField Plans, to calculate the average amounts of protectant applied to RTG furniture;

- A marketing expert, Steven Gaskin, who designed and conducted a conjoint analysis survey to determine the discounted value of the Plans where the ForceField was not applied consistent with Shield's recommendations (i.e., in small amounts, not to all sides). Mr. Gaskin found that the discount was between 9.5% to 17.5% of the ForceField Protection Plan Purchase Price, which correlates to $5-$9 off the price of the average ForceField Protection Plan; and

- An economist and damages expert, Colin Weir, to apply all the conjoint analysis, purchase and application evidence, and opine on a class-wide damage amount.

9. RTG put up two experts of their own: Dr. Hauser (on polymers) and Dr. Reibstein (addressing Gaskin's conjoint analysis). All eight experts were deposed by the parties.

10. On February 9, 2017, the parties attended a full-day mediation session in Miami with Rodney Max. The parties continued the in-person mediation in Atlanta on February 17, 2017.

11. On April 18, 2017, the Court held a hearing on Plaintiffs' Motion for Class Certification and took the Motion under advisement. Following the hearing, at the suggestion of Mr. Max, the parties again discussed settlement through telephone calls and the exchange of e-mails.

12. On May 8, 2017, following continued efforts by Mr. Max, the parties agreed on the terms of a settlement of the Plaintiffs' claims nationwide. The parties then

4

discussed attorneys' fees and expenses. On May 9, 2017, the parties reached agreement on an amount for which the Defendants would not object- $4 million for attorneys' fees and expenses.

13. Cohen Milstein has worked with RTG and KCC on the settlement documents and the settlement website. Cohen Milstein has also responded to dozens of calls and emails from claimants inquiring about the settlement.

14. While the time to object to the fee or opt out of the settlement does not expire until November 17, 2017, to date, only two objections have been received. The chief complaint of both objections is that the settlement does not require RTG to refund the entire purchase of the furniture, as opposed to a portion of the price for the fabric protection plans.

15. Because of the time that we devoted to this action, Cohen Milstein attorneys, including myself, Ted Leopold, and Eric Kafka, were precluded from work on other cases or taking on additional matters.

16. The Named Plaintiffs in this action all endured written discovery, deposition preparation, and depositions, and provided documents to the Defendants. Several (Hankinson, Guerra, and Gandolfo) rejected individual settlements of $2,000 offered by RTG, and permitted experts to come into their home to test their furniture.

### COHEN MILSTEIN'S TIME AND EXPENDITURES

17. The schedule attached as Exhibit A, and incorporated herein, is a detailed summary of the amount of time spent by my firm's partners, attorneys, and professional support staff who were involved in this litigation through September 30, 2017. It does not include any time devoted to preparing this declaration or otherwise pertaining to the Motion. The lodestar calculation is based on my firm's current billing rates. Exhibit A was prepared from contemporaneous time records regularly prepared and maintained by my firm. The hourly rates

for my firm's partners, attorneys, and professional support staff included in Exhibit A are the usual and customary hourly rates charged for their services in similar complex litigation. In addition, my firm has submitted fee petitions in other cases that have reported hourly rates at amounts comparable to those sought herein, and courts have approved an award of attorneys' fees in such cases.

18. The total number of hours reasonably expended on the *Hankinson* and *Triplett* actions by my firm from inception to September 30, 2017 is 3,768. The total lodestar for my firm at current rates is $2,097,818.75.

19. The expenses my firm incurred in litigation this action are reflected in the books and records of my firm. These books and records are prepared from expense vouchers, receipts, and check records and other source materials and accurately reflect the expenses incurred.

20. My firm incurred a total of $514,088.85 in unreimbursed expenses, all of which were reasonable and necessary for the prosecution of the *Hankinson* and *Triplett* actions. A summary of those expenses by category is attached as Exhibit B.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: October 18, 2017

Douglas J. McNamara