# EXHIBIT 3

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. 9:15-CV-81139-COHN/SELTZER

BENJAMIN HANKINSON, JAMES
GUERRA, JEANETTE GANDOLFO, LISA
PALMER, DONALD ANDERSON, and LISA
PRIHODA, individually and on behalf of
others similarly situated,

    Plaintiffs,

vs.

R.T.G. FURNITURE CORP., d/b/a Rooms
To Go, RTG AMERICA, LLC, THE
JEFFREY SEAMAN 2009 ANNUITY
TRUST, RTG FURNITURE CORP. OF
GEORGIA, d/b/a Rooms To Go, ROOMS
TO GO NORTH CAROLINA CORP., d/b/a
Rooms To Go, RTG FURNITURE OF
TEXAS, L.P., d/b/a Rooms To Go, RTG
TEXAS HOLDINGS, INC., and R.T.G.
FURNITURE CORP. OF TEXAS,

    Defendants.

## DECLARATION OF STEVEN G. CALAMUSA IN SUPPORT OF UNOPPOSED MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND INCENTIVE AWARDS

I, Steven G. Calamusa, declare:

1.     I am an attorney admitted in the Southern District of Florida and have practiced law since 1994. I am a partner at the law firm of Gordon & Doner, P.A. where I've been employed for 20 years. At Gordon & Doner, I handle complex litigation including class action matters. I make this declaration upon personal knowledge as a litigator for Co-Counsel in this action and in *Triplett v. Rooms To Go North Carolina Corp. d/b/a Rooms to Go, et. al.*, Case No. 5:16-cv-926 (E.D.N.C.)

1

2.     My firm had an active role as Co-Counsel in both the *Hankinson* and *Triplett* actions and worked in coordination Co-Counsel, Cohen Milstein. Throughout the litigation, Gordon & Doner and Cohen Milstein ensured that the case was staffed efficiently and took steps to avoid the duplication of efforts. This included dividing work among the firms, as well as individual attorneys at those firms, to minimize duplication, including assigning specific responsibility for particular tasks and/or subject areas.

3.     My firm worked on nearly every aspect of this case including the investigative, pre-suit, litigation and negotiation phases.  Among the tasks undertaken by my firm were: (1) Conducting an extensive pre-filing investigation, which included interviewing numerous potential Plaintiffs and potential witnesses as well as intensive document gathering/indexing; (2) Participating in reviewing discovery and complaints; (3) Reviewing and analyzing thousands of documents as well as videos produced in discovery as well as pleadings and depositions; (4) Taking fact depositions; (5) Preparing Plaintiffs for deposition as well as defending some of the Plaintiffs' depositions, (6) Interviewing and preparing select Plaintiffs' expert witnesses; (7) Participation in strategy regarding defending depositions of the Plaintiffs' expert witnesses; (8) Participation in strategy regarding deposing Defendants' expert witnesses as well as attending/assisting during selected expert depositions; (9) Participation in strategy meetings regarding opposing some of Defendants' motions including, motions to dismiss; (10) Attending two mediations (one in Miami, Florida and the 2nd in Atlanta, Georgia). Participated in negotiating the settlement and reviewing the settlement agreement; (11) Extensive involvement with named all Plaintiffs during investigative, pre-suit, litigation/discovery and settlement phases; (12) Involvement in strategy meetings with Cohen Milstein, including meetings

regarding successfully moving for preliminary approval of the settlement and conditional certification; (13) Reviewing settlement materials.

4. Prior to filing, Gordon & Doner, P.A., with Cohen Milstein, extensively investigated Defendants' ("RTG") application of ForceField protectant by conducting extensive research and retaining an expert (Marco Kaltofen) to test the furniture of three named Plaintiffs for the presence of fluoropolymer substances.

5. On August 12, 2015, plaintiffs Benjamin Hankinson, James Guerra, and Jeanette Gandolfo initiated a putative nationwide class action against R.T.G. Furniture Corp. d/b/a Rooms To Go in the United States District Court, Southern District of Florida, captioned Hankinson, v. R.T.G. Furniture Corp., d/b/a Rooms to Go, Case No. 9:15-cv-81139, concerning RTG's ForceField fabric and leather protection plans.

6. On December 1, 2016, Plaintiff's filed an action in North Carolina against RTG, asserting claims similar to the Second Amended Complaint in the Hankinson action. *See* Triplett v. Rooms To Go North Carolina Corp., et al., No. 516-cv-00926-FL (E.D.N.C.).

7. Between January 2016 and December 2016, the parties engaged in extensive discovery, completing full class, fact, and expert discovery. The parties exchanged written discovery, including multiple sets of interrogatories and requests for production. Gordon & Doner reviewed thousands of pages of documents from RTG, Shield Industries (who sells the FoceField product to RTG), and ICT, a manufacturer or the protectants that is sold as ForceField. Gordon and Doner and Cohen Milstein divided its labor to effectively to review these materials and conduct sixteen (16) fact depositions of RTG and Shield personnel, defend six (6) depositions of named Plaintiffs, defend a

3

family member of a named Plaintiff (Cherish Hankinson), and defend the deposition of a former employee of RTG.

8. To support class certification, Plaintiffs assembled six experts in the case Co-Counsel, Cohen Milstein, bore the expense of said experts and most of the costs in this case. These experts included:

- A scientist, Dr. Marco Kaltofen, who tested for fluoropolymers to determine if Plaintiffs' furniture had any evidence of ForceField protectant application;

- A scientist, Dr. Randy Meirowitz, a member of the American Association of Textile Chemists and Colorists, who tested the efficacy of ForcField, and opined on the adequacy of RTG's protocol in applying the protectant to different fabrics;

- A furniture expert, Leonard Backer, who conducted a site visit to RTG's Lakeland, Florida site to review the ForceField application process;

- An economist, Christopher Jackman, to examine RTG's records of purchases of ForceField products, and the sales of ForceField Plans, to calculate the average amounts of protectant applied to RTG furniture;

- A marketing expert, Steven Gaskin, who designed and conducted a conjoint analysis survey to determine the discounted value of the Plans where the ForceField was not applied consistent with Shield's recommendations (i.e., in small amounts, not to all sides). Mr. Gaskin found that the discount was between 9.5% to 17.5% of the ForceField Protection Plan Purchase Price, which correlates to $5-$9 off the price of the average ForceField Protection Plan; and

- An economist and damages expert, Colin Weir, to apply all the conjoint analysis, purchase and application evidence, and opine on a class-wide damage amount.

9. RTG retained two (2) experts: Dr. Hauser (on polymers) and Dr. Reibstein (addressing Gaskin's conjoint analysis). All eight experts were deposed by the parties.

10. On February 9, 2017, Gordon & Doner and Cohen Milstein attended a full-day mediation session in Miami, Florida with mediator, Rodney Max. The parties continued the in-person mediation in Atlanta, Georgia on February 17, 2017.

11. On April 18, 2017, the Court held a hearing on Plaintiffs' Motion for Class Certification and took the Motion under advisement. Following the hearing, at the suggestion of

Mr. Max, the parties again discussed settlement through telephone calls and the exchange of e-mail.

12. On May 8, 2017, following continued efforts by Mr. Max, the parties agreed on the terms of a settlement of the Plaintiffs' claims nationwide. The parties then discussed attorneys' fees and expenses. On May 9, 2017, the parties reached agreement on an amount for which the Defendants would not object- $4 million for attorneys' fees and expenses.

13. Gordon & Doner has worked with Cohen Milstein on the settlement documents. Gordon and Doner has and continues to respond to claimants inquiring about the settlement.

14. While the time to object to the fee or opt out of the settlement does not expire until November 17, 2017, to date, only two objections have been received. The chief complaint of both objections is that the settlement does not require RTG to refund the entire purchase of the furniture, as opposed to a portion of the price for the fabric protection plans.

15. Because of the time devoted to this action, select members of Gordon & Doner staff and I were precluded from engaging in work on other cases or taking on additional matters.

16. The Named Plaintiffs in this action all endured written discovery, deposition preparation, and depositions, and provided documents to the Defendants. Several (Hankinson, Guerra, and Gandolfo) rejected individual settlements of $2,000 offered by RTG, and permitted experts to come into their home to test their furniture.

**GORDON & DONER'S TIME AND EXPENDITURES**

17. The schedule attached as Exhibit A, and incorporated herein, is a summary of the amount of time spent by my firm's partners and professional support staff who were involved in all aspects of this case through September 30, 2017. It does not include any time devoted to preparing this declaration or otherwise pertaining to the Motion. The lodestar calculation is based on my firm's contract with the named Plaintiffs. Exhibit A was prepared from contemporaneous time records regularly prepared and maintained by my firm. In addition to being set forth in our contract with the Plaintiffs, the hourly rates for my firm's partners and professional support staff included in Exhibit A are the usual and customary hourly rates charged for their services in similar complex litigation. In addition, my firm has submitted fee petitions in other cases that have reported hourly rates at amounts comparable to those sought herein, and courts have approved an award of attorneys' fees in such cases.

18. The total number of hours reasonably expended on the *Hankinson* and *Triplett* actions by my firm from inception to September 30, 2017 is 2,781.93. The total lodestar for my firm at current rates is $1,433,548.70.

19. The expenses my firm incurred in litigation this action are reflected in the books and records of my firm. These books and records are prepared from expense vouchers, receipts, check records and/or other source materials which accurately reflect the expenses incurred.

20. My firm incurred a total of $10,810.64 in unreimbursed expenses, all of which were reasonable and necessary for the prosecution of the *Hankinson* and *Triplett* actions. My firm spent $7,475.61 on travel and travel related costs (such as airline tickets, hotels, meals, and taxis). My firm spent the remaining $3,335.03 on copies, postage, legal research, and office-based costs.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: October 18, 2017

Steven G. Calamusa